**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1394
_____

CAROLINE DELLAPENNA,
Appellant

v.

TREDYFFRIN/EASTTOWN SCHOOL DISTRICT,
DANIEL WATERS, and MICHAEL AZZARA.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-09-cv-06110)
District Judge:  Hon. Timothy J. Savage
_____

Submitted under Third Circuit LAR 34.1(a)
October 27, 2011

Before:  SLOVITER, GREENAWAY, JR. and ALDISERT, Circuit Judges.

(Opinion Filed:  October 28, 2011)
_____

OPINION OF THE COURT
_____

ALDISERT, Circuit Judge.

Caroline Gu Dellapenna appeals the order of the District Court for the Eastern

District of Pennsylvania granting summary judgment to the Tredyffrin/Easttown School

District and its employees, Daniel Waters and Michael Azzara, (collectively, "TESD") on

her claims of employment discrimination and retaliation. Invoking Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and the Pennsylvania Human Relations Act, 43 P.S. § 951 ("PHRA"), Dellapenna contends that TESD fired her as its director of finance because of her race, gender, and national origin, and because she complained about discrimination. After reviewing the record, we conclude that Dellapenna's evidence falls far short of supporting claims of employment discrimination or retaliation. We will affirm the judgment of the District Court.

I.

Because we write primarily for the parties, who are familiar with the facts and the proceedings in the District Court, we will revisit them only briefly. Caroline Gu Dellapenna is a naturalized American citizen originally from China. TESD hired her as Controller in 1996, promoted her to Director of Finance in June 2006, and terminated her in January 2007. Among her other obligations at TESD, Dellapenna was responsible for preparing the district's annual financial report.

At the end of June 2006, shortly after Dellapenna's tenure as finance director began, TESD's outside auditor uncovered a range of accounting irregularities, including over a million dollars of overstated accrued expenses. In September 2006 Michael Azzara, TESD's Chief Operations Officer and Dellapenna's supervisor, was informed by the personnel director about disconcerting complaints regarding Dellapenna's performance. Specifically, two employees working under Dellapenna had alleged that she regularly abused and berated her staff while instructing them to use improper accounting methods. Azzara subsequently interviewed the staff members and documented their grievances.

Based on the above, and suspecting Dellapenna of having committed fraud, TESD hired a forensic accountant to audit Dellapenna's work on October 9, 2006. Michael Waters, the district superintendent, informed Dellapenna that members of her staff had voiced grievances regarding her professional and interpersonal conduct. Waters advised her that he would discuss these allegations fully upon the completion of the district's annual financial report. Several days later, Dellapenna requested documentation of the complaints against her. Waters reiterated that he would await the completion of the annual financial report before discussing the allegations.

On November 21, 2006, Dellapenna complained to Waters about statements she had overheard Azzara make on the telephone, in which he allegedly accused her of fraud. She requested an investigation into Azzara's conduct. Waters agreed to review these accusations as well after the annual financial report was complete. On December 15, 2006, Dellapenna again complained about similar comments she had overheard Azzara make during another telephone conversation.

On December 20, 2006, Waters finally met with Dellapenna to discuss her staff's allegations about her "demeaning and humiliating treatment." App. 00583-00585, 00374-00375. Shortly thereafter, the independent auditor concluded that no fraud had occurred. Instead, the auditor found, the accounting department's procedures were not "in conformity with generally accepted accounting principles," Dellapenna was "aware" of this, and she intentionally flouted prevailing accounting methods without the school district's knowledge or approval. App. 00689-00703. The auditor concluded that the accounting department was "dysfunctional," Dellapenna and her staff maintained "poor communication," "personality conflict issues" abounded, and that this dysfunction

3

needed to be addressed before the accounting department could perform its appointed tasks adequately. Id.

On January 5, 2007, the day after the auditor released this report, Dellapenna complained to Waters that she had been subjected to a hostile work environment and was mistreated because of her "age, gender, race, and/or ethnic background." App. 00882. In accordance with school district policy, Waters referred Dellapenna's grievances to an ad hoc committee. On January 16, 2007, Dellapenna again complained to the school district, stating that Azzara's previous statements regarding her accounting methods were groundless. She raised no new claims or evidence regarding discrimination.

On January 25, 2007, the school district sent Dellapenna a summary of the ad hoc committee's review of her complaints. The committee concluded that Azzara's telephone conversations were not motivated by discrimination and noted that Dellapenna had failed to offer any evidence of discrimination notwithstanding the district's requests that she do so. The committee also concluded that Dellapenna's "substantial misconduct" justified her termination. In a letter sent on January 26, 2007, Waters informed Dellapenna that TESD was firing her for cause, based on her "willful, wanton and/or gross misconduct as well as material and substantial dishonesty." App. 00773. Waters advised Dellapenna that she had a right to a hearing. She declined the invitation, even though Waters informed her that a failure to request a hearing would result in her immediate discharge.

Dellapenna filed a complaint in the District Court, alleging race, gender, and age discrimination, as well as unlawful retaliation under Title VII and the PHRA.[1] On January 13, 2011, the District Court granted summary judgment to TESD, concluding that Dellapenna's evidence did not satisfy the prima facie requirements for a

---

[1] Dellapenna has since dismissed her age discrimination claims.

4

discrimination claim. Even if such a prima facie case could be made, moreover, the District Court found that TESD had articulated a legitimate, nondiscriminatory reason for its actions, and Dellapenna had failed to show that these reasons were a pretext for discrimination. The Court also found Dellapenna's allegations of hostile work environment and retaliation meritless. Dellapenna filed a timely appeal.

II.

The District Court had jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291. "We exercise plenary review of the District Court's grant of summary judgment, applying the same legal standard" as it should have. Vitalo v. Cabot Corp., 399 F.3d 536, 542 (3d Cir. 2005). A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Federal Rules of Civil Procedure. We view the record in the light most favorable to Dellapenna and draw all reasonable inferences in her favor. See Vitalo, 399 F.3d at 542. We apply this standard with "added rigor in employment discrimination cases, where intent and credibility are crucial issues." Stewart v. Rutgers State Univ., 120 F.3d 426, 431 (3d Cir. 1997) (citation omitted). To defeat summary judgment, however, Dellapenna must "show[] that the materials cited do not establish the absence . . . of a genuine dispute." Rule 56(c)(1)(B). This requires showing something more than the "mere existence of a scintilla of evidence" for elements on which she bears the burden of production. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "An inference based upon speculation or conjecture does not create a material fact." Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990).

5

III.

Dellapenna contends that TESD violated Title VII and the PHRA by firing her because of her gender, race, and national origin, and because she complained about such discrimination.[2] Because the evidence, even when construed in Dellapenna's favor, does not support claims of discrimination or retaliation, we will affirm the District Court's grant of summary judgment. We address both of Dellapenna's contentions in turn.

A.

Dellapenna first contends that she was discriminated against and ultimately fired because of discriminatory animus based on her race, national origin, and gender. As Dellapenna lacks direct evidence of this discrimination, her claim falls under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas, the plaintiff bears the initial burden of demonstrating a prima facie case of unlawful discrimination or retaliation. See id. at 802. If the plaintiff succeeds, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its decision. Id. Once the employer meets this "relatively light burden," Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994), the burden of production returns to the plaintiff, who can defeat summary judgment only by showing by a preponderance of the evidence that the employer's stated reason is pretextual. See id. Accordingly, once an employer has stated a legitimate and nondiscriminatory reason, the

---

[2] Under Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Title VII also prohibits an employer from discriminating against an employee because she has opposed an unlawfully discriminatory employment practice. See id. § 2000e-3(a). Claims arising under the PHRA are governed by the same standards set forth in Title VII for determining summary judgment motions. See Jones v. School Dist. of Phila., 198 F.3d 403, 409 (3d Cir. 1999).

plaintiff must produce evidence that either "(1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or (2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of" the termination. Id. at 762. Because the ultimate issue is whether "discriminatory animus motivated the employer," it is not enough to show that the employer made a "wrong or mistaken" decision. Id. at 765 (citations omitted). Rather, the plaintiff must uncover "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's explanations that would permit a reasonable factfinder to believe that the employer did not actually act for its stated reasons. Id.

In applying this framework here, Dellapenna's contentions fall short at each step of the McDonnell Douglas framework: she raises no issue of material fact with respect to her prima facie case nor TESD's allegedly pretextual reasons for firing her.

1.

For Dellapenna's prima facie case of intentional discrimination, she must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the school district treated similarly situated persons who are not members of the protected class—i.e., persons who behaved like Dellapenna but who are neither female, ethnically Chinese, nor from China—more favorably than her. See Jones, 198 F.3d at 410-411; see also Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797-798 (3d Cir. 2003). Because some cases of discrimination involve a plaintiff who can find no similarly situated persons, Dellapenna may also meet her burden on the fourth element—the only one in dispute here—by producing evidence of a "causal nexus between the harm suffered and [her] membership in a protected class, from

7

which a reasonable juror could infer, in light of common experience, that [TESD] acted with discriminatory intent." Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 275 (3d Cir. 2010).

We are not persuaded that Dellapenna has made a prima facie case of discrimination. First, Dellapenna has not submitted any evidence that the school district treated any male or non-Chinese employee more favorably than her, much less a "similarly situated" one who improperly discharged his job responsibilities and mistreated subordinates. Second, although Dellapena is entitled to rely on a "broad array of evidence" in demonstrating a causal link between her protected status and her termination, Marra v. Phila. Hous. Auth., 497 F.3d 286, 302 (3d Cir. 2007) (citation omitted), she has failed to show that such a link exists.[3] Dellapenna points almost solely to the timing of her firing to establish the requisite causal nexus. Specifically, she contends that her January 5, 2007, letter complaining about discrimination and her subsequent firing 14 days later compel an inference of discriminatory intent, not just retaliation. Although a close temporal proximity between events may, in some instances, suffice to show a causal link, see id., we cannot ignore the overwhelming weight of the

---

[3] Dellapenna contends that she has satisfied the causation element because TESD hired a white male to replace her, citing Matczak v. Frankford Candy & Chocolate Co., 136 F.3d 933, 939 (3d Cir. 1997), which permitted a plaintiff to show a causal nexus with evidence that her position was filled by a person not belonging to the protected class. To the extent Dellapenna contends that Matczak makes this fact dispositive, she is mistaken. Matczak reinforces the simple notion that we do not "woodenly" demand proof of disparate treatment for a prima facie case, but instead may look to "alternative" evidence—such as a replacement's gender and race—in our search for a causal nexus. Id. Although Dellapenna's replacement's race and gender inform our causal nexus analysis, they do not control it. Matczak and Anderson, 621 F.3d at 275, merely hold that we should not dismiss a case solely because of a technical failure to show disparate treatment, but should examine whether other evidence is indicative of discriminatory causation. Here, neither Dellapenna's replacement nor any other evidence raises an inference of a causal nexus between her race, gender, or national origin and her termination.

undisputed evidence that countervails any causal relationship between Dellapenna's gender, race, or national origin and her termination. The school district began scrutinizing Dellapenna's managerial and accounting practices in October. By that point, an audit had already uncovered rampant accounting errors. Her subordinates had lodged several complaints about her. And an independent firm found her management during this period to be so deficient that her department deserved the label "dysfunctional." That Dellapenna lodged allegations after her employment was in obvious peril does not, in itself, create a plausible inference of a connection between her protected status and her firing. Moreover, even if her last-minute allegations were somehow connected to her firing, such a fact would go to her retaliation claim, not her prima facie discrimination claim.

At bottom, there is nothing in the record suggesting that Dellapenna was fired because of her race, national origin, or gender. Dellapenna instead submits for our consideration only her subjective suspicions of discrimination, which are not sufficient to create an issue of material fact. See Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990); cf. Waggoner v. Garland, 987 F.2d 1160, 1164 (5th Cir. 1993). Dellapenna simply has not "shown that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). We therefore agree with the District Court that Dellapenna has not satisfied her burden of showing a prima facie instance of discrimination.

## B.

Although Dellapenna's failure to make a prima facie case alone justifies summary judgment, we will briefly address the remaining two McDonnell Douglas steps for thoroughness. TESD has clearly articulated legitimate and nondiscriminatory reasons for

9

firing Dellapenna: she verbally abused her staff, intentionally misstated accounting records, and ordered her subordinates to do the same. These legitimate reasons shift the burden to Dellapenna to prove pretext. See Wishkin v. Potter, 476 F.3d 180, 185 (3d Cir. 2007). To defeat summary judgment, Dellapenna must produce evidence from which a factfinder could reasonably either disbelieve TESD's legitimate reasons, or believe that discrimination was more likely than not a motivation for her termination. See id.

Dellapenna has not highlighted any evidence that could reasonably support an inference of pretext. She relies heavily on a comment Azzara allegedly made, in which he said that "his wife does not work and he brings the bacon home and he likes it that way." Dellapenna v. Tredyffrin/Eastown Sch. Dist., No. 09-6110, 2011 WL 130156, at *8 (E.D. Pa. Jan. 13, 2011). Dellapenna has framed this statement to mean that Azzara has a prejudice against working women. This comment's probativeness of Azzara's anti-woman animus is marginal; its probativeness that decisionmakers in the school district harbored discriminatory intent is nil. Azzara had no decisionmaking authority vis-à-vis Dellapenna's termination. See App. 00607, 00656. Rather, the school board fired Dellapenna after she refused a hearing. See id. at 00810. We do not afford much weight to stray remarks made by nondecisionmakers. See Pivirotto v. Innovative Sys., 191 F.3d 344, 359 (3d Cir. 1999).

Moreover, the contention that Azzara's accusations of fraud are somehow probative of unlawful discrimination and pretext borders on frivolous. Dellapenna does not even attempt to tie together the logical links required to show how allegations of fraud point to a discriminatory intent. She instead merely speculates that she "cannot imagine why he [would say this], other than, . . . because of [her] age, [her] race, [her] gender and [her] national origin." App. at 00392-00393. Absent evidence that Azzara

10

treated other similarly situated employees differently, these alleged statements, if real, relate solely to Dellapenna's job performance, not her protected status. Dellapenna points to several other employee interactions to prove this element, but none of this evidence could support even the faintest inference of pretext. As her accusations about Azzara's comments exemplify, the entirety of Dellapenna's pretext "evidence" constitutes nothing more than conjectures of discrimination conjured from otherwise routine workplace interactions between supervisors and a recalcitrant subordinate. Especially in the face of the school district's unrebutted evidence of her abysmal performance as Director of Finance, Dellapenna's remaining accusations deserve no further discussion, as mere speculation does not create genuine issues of material fact. See Robertson, 914 F.2d at 382 n.12 (3d Cir. 1990). Dellapenna has not met the light burden of McDonnell Douglas and Rule 56(a) in showing pretext. Summary judgment was appropriate.

## IV.

We further hold that Dellapenna's contentions regarding retaliation are baseless. To establish a prima facie case of retaliation, Dellapenna must show that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989). Again, only the last element is now in contention. We conclude that Dellapenna has failed to sustain a prima facie claim of retaliation because she does not demonstrate how her firing was causally related to her complaints of discrimination. As a result, we agree with the District Court that Dellapenna cannot maintain a prima facie case of retaliation.

Similar to the framework we impose on a discrimination claim, Dellapenna must show that her termination was motivated by her complaints. See Moore v. City of Phila.,

11

461 F.3d 331, 342 (3d Cir. 2006). If she succeeds, she must then show that the district's stated reason for firing her is pretextual. Id. Dellapenna misses the mark at both steps. She cannot show that her firing at the end of a months-long investigation into her accounting practices was the result of a complaint she made after the investigation had begun. Indeed, the record shows that Azzara did not learn of Dellapenna's complaints about him until after she had already left the school district, see App. 00256, 00711, nor did Waters know that he had also been accused of discriminating against Dellapenna until the inception of this lawsuit, see id. at 00664-00665. Furthermore, even if Dellapenna could make out a prima facie case of retaliation, she would be unable to defeat summary judgment on the issue of pretext. As discussed above, the school district had ample reason to terminate Dellapenna. Dellapenna's speculations to the contrary create no issues of material fact.

## IV.

Having examined the facts in the light most favorable to Dellapenna and drawn all reasonable inferences in her favor, we agree with the District Court that there is insufficient evidence from which a reasonable jury could conclude that Appellees had discriminated against Dellapenna because of her race, national origin, or gender. Because judgment as a matter of law was appropriate, we will AFFIRM the judgment of the District Court.